United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JANICE O'BRIEN,

Plaintiff(s),

v.

CONTINENTAL CASUALTY COMPANY,

Defendant(s).

_______________________________________/

CASE NO. 5:13-cv-01289 EJD

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND; GRANTING DEFENDANT'S MOTION TO DISMISS**

[Docket Item No(s). 10, 14]

Plaintiff Janice O'Brien ("Plaintiff') initiated the instant action in Monterey County Superior Court against Defendant Continental Casualty Company ("Defendant") for breach of contract, breach of the covenant of good faith and fair dealing and financial elder abuse in violation of California Welfare and Institutions Code § 15610.30 et. seq. See Not. of Removal, Docket Item No. 1, at Ex. A ("Compl."). Defendant then removed the action to this court on March 21, 2013, pursuant to 28 U.S.C. § 1441(b).

Presently before the court are two matters: (1) Plaintiff's Motion to Remand, and (2) Defendant's Motion to Dismiss the claim for financial elder abuse. See Docket Item Nos. 10, 14. The court found these matters suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and previously vacated the associated hearing dates. The court has carefully reviewed the moving, opposing and reply papers filed for both motions. For the reasons explained below, Plaintiff's Motion to Remand will be denied and Defendant's Motion to Dismiss will be granted

## I. BACKGROUND

According to the Complaint, Plaintiff "is a 91-year old widow and mother of seven children." See Compl., at ¶ 6. In 1996, Plaintiff purchased a long-term care insurance policy from Defendant. Id. at ¶ 16. She has paid all of her premiums on time and currently pays $4,998 annually. Id. at ¶ 17. The policy provides for long-term care benefits, including personal care services, up to $175 per day. Id. at ¶ 18. Plaintiff is eligible to receive the benefit for life. Id.

After Plaintiff was hospitalized on July 15, 2011, her children and her primary care physician determined that Plaintiff should not be permitted to live alone. Id. at ¶ 27. Plaintiff's family hired three personal caregivers to assist Plaintiff at her home, each of whom assist Plaintiff with her daily living activities. Id. According to Plaintiff, the caregivers meet all of Defendant's policy requirements. Id. at ¶ 28. Plaintiff pays them $20 to $24 per hour. Id.

Plaintiff was ultimately diagnosed with chronic cognitive impairment, mild dementia and "probably has early Alzheimer's." Id. at ¶¶ 37, 38. She submitted a claim to Defendant to obtain benefits under the long-term care policy. Id. at ¶ 30. Defendant denied the claim as well as Plaintiff's subsequent appeal of the denial. Id. at ¶¶ 34, 35. This lawsuit followed.

## II. THE MOTION TO REMAND

### A. Legal Standard

#### 1. Removal Jurisdiction Generally

Removal jurisdiction is a creation of statute. See Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979) ("The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress."). Only those state court actions that could have been originally filed in federal court may be removed. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant."); see also, e.g., Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by defendant."). Accordingly, the removal statute provides two basic ways in which a state court action may be removed to federal court: (1) the case presents a federal question, or (2) the case is between citizens

United States District Court
For the Northern District of California

of different states. 28 U.S.C. §§ 1441(a), (b).

When, as here, the Notice of Removal relies on diversity as a basis for federal jurisdiction, the "amount in controversy" must exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). If it appears at any time before final judgment that this requirement cannot be met, the case must be remanded. See 28 U.S.C. § 1447(c).

**2. Removal and Remand**

The party seeking removal must bear the burden to establish the basis for federal jurisdiction, even on a motion to remand. See Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988). If a plaintiff's state court complaint does not specify the exact amount of damages sought, the defendant must establish, by a preponderance of the evidence, that the amount in controversy exceeds the statutory minimum. See Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996). This requires a defendant must to prove it is "more likely than not" that the amount in controversy exceeds $75,000. See id. Satisfying this burden can sometimes be challenging since removal statutes are strictly construed against removal. Emrich, 846 F.2d at 1195. "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

In order to determine whether the defendant has made a sufficient showing, the court first considers whether it is "facially apparent" from the complaint that the requisite amount in controversy exists. See Singer v. State Farm Mutual Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997). Where the amount of damages are not specified, the court may look to facts in the complaint, and may require the parties to submit "summary-judgment-type evidence" relevant to the jurisdictional question. See id. Amount in controversy is determined as of the date of removal, and may include claims for general and special damages, any available attorneys fees, injunctive relief and punitive damages if recoverable as a matter of law. See Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1117 (9th Cir. 2004); see also In re Ford Motor Co., 264 F.3d 952, 958 (9th Cir. 2001); see also Conrad Assocs. v. Hartford Accident & Indem. Co., 994 F. Supp. 1196, 1198-99 (N.D. Cal. 1998) ("The amount in controversy includes claims for general and special damages (excluding costs and interests), including attorneys fees, if recoverable by statute or contract, and punitive

damages, if recoverable as a matter of law.")

A speculative argument as to the amount in controversy is insufficient. See Gaus, 980 F.2d at 567; see also Valdez, 372 F.3d at 1117.

**B. Discussion**

Since the parties do not dispute diversity of citizenship, this motion turns on whether Defendant has met its burden to establish the requisite "amount in controversy." On that issue, Defendant contends it is "facially apparent" from the facts in the Complaint that the damages associated with Plaintiff's breach of contract claim will "more likely than not" exceed $75,000. The court agrees.

On a claim for the breach of a disability insurance contract, the "measure of liability and damage is the sum or sums payable in the manner and at the times as provided in the policy to the person entitled thereto." Cal. Ins. Code § 10111. Further, breach of insurance contract damages are limited to "the amount due by the terms of the obligation, with interest thereon." Cal. Ins. Code § 3302.

Here, Plaintiff has included enough facts in the Compliant to reasonably determine the amount of damages allegedly incurred as a result of Defendant's purported breach of contract. Plaintiff alleges that her long-term care insurance policy provides for a daily benefit $175 as of February, 2012. See Compl., at ¶ 18. She also alleges that she has required in-home care since July 15, 2011, that Plaintiff's family decided "she should no longer be permitted to live alone," that Plaintiff paid each of her caregivers approximately $20 to $24 per hour, and that, according to her doctors, Plaintiff's medical condition necessitates no less than 8 hours of in-home care every day. Id. at ¶¶ 26, 28, 30, 43 ("Dr. Straface also marked that [Plaintiff] . . . 'requires care and assistance . . . with home health personnel on a daily basis for 8-12 hours each day in the setting of Plaintiff's home.'"); 44 ("Dr. Centurion also filed out a Plan of Care for [Defendant] in which he indicated . . . 'Patient requires assistance by a qualified caregiver 10-12 hours a day, seven days a week.'"). Furthermore, Plaintiff alleges that Defendant has "refused to make a single payment." Id. at ¶ 58.

Putting these allegations together, this means that from July 15, 2011, to the date of removal on March 21, 2013, Plaintiff had incurred in-home care costs of no less than $160 per day (8 hours x

United States District Court
For the Northern District of California

$20 per hour) for 615 days - or $98,400 - based on her own factual assertions. This amount is more than sufficient to the meet the amount in controversy requirement and no other form of potential damages or fees need be considered.

In the motion and again in her reply brief, Plaintiff argues that Defendant cannot meet its burden to demonstrate federal jurisdiction based only on potential breach of contract damages because Plaintiff did not allege, and Defendant has not shown, *exactly* how many hours per day and *exactly* how many days she paid for in-home care. Such exactitude, however, is not required here. As noted, the Complaint on its face contains sufficient information about the subject insurance policy, Plaintiff's medical needs and the payments already made to caregivers to calculate the minimum amount that could be awarded if Defendant is determined to have breached the insurance contract. Plaintiff seeks to have the court ignore these allegations. It will not do so.[1]

In addition, it is not Defendant's burden to prove damages with certainty, to the extent that is the burden Plaintiff seeks to impose here. In opposing this motion, Defendant need only show that it is "more likely than not" that the damages, or any part of them, will exceed the requisite amount in controversy. See Sanchez, 102 F.3d at 404. Defendant has done so, albeit based only on Plaintiff's allegations with respect to one cause of action.

Since the court finds that Defendant has satisfied its burden with respect to the amount in controversy, Plaintiff's Motion to Remand will be denied.

## III. THE MOTION TO DISMISS

### A. Legal Standard

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is

[1] Notably, Plaintiff does not contradict the apparent findings of her doctors concerning the amount of daily in-home care required or indicate that she has required or paid for anything less than 8 hours of care per day, every day, since July 15, 2011.

appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). The factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). The court must accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001). But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

**B. Discussion**

In its Motion to Dismiss, Defendant argues that Plaintiff did not and cannot state a claim for financial elder abuse in violation of California Welfare and Institutions Code § 15610.30 based on the gravamen of Plaintiff's Complaint, which Defendant characterizes as one for breach of insurance contract rather than one for abuse.

According to § 15610.30(a), "financial abuse" occurs when a person: (1) "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both," (2) "[a]ssists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both, or (3) [t]akes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence." The statute then defines two ways a person can "take, secrete, appropriate, obtain or retain property," the first being when "the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult," and the second being "when an elder or dependent adult is deprived of any property right, including by means of an

United States District Court
For the Northern District of California

agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult." Cal. Welf. & Inst. Code § 15610.30(b), (c).[2]

Determining whether particular conduct can be classified as "financial elder abuse" as that phrase is defined in the statute is not a straightforward prospect because the law has not been subjected to significant interpretation. Those courts which have examined § 15610.30 have found potential abuse where a mortgage broker persuaded an elderly woman to refinance her home on terms inferior to those of her existing mortgage (Zimmer v. Nawabi, 566 F. Supp. 2d 1025 (E.D. Cal. 2008)), where an attorney and another individual colluded to persuade an elderly woman to make a significant monetary investment in a nightclub (Wood v. Jamison, 167 Cal. App. 4th 156 (2008)), and where the beneficiaries of a family trust received property from an elderly relative despite their knowledge that the property transfer was contrary to a trust amendment (Teselle v. McLoughlin, 173 Cal. App. 4th 156 (2009)).

In contrast, "financial elder abuse" was not found against a bank who issued a loan to an elderly man and transferred funds to foreign bank accounts pursuant to his instructions. Das v. Bank of America, N.A., 186 Cal. App. 4th 727 (2010). In that case, the court affirmed a judgment of dismissal because Plaintiff's allegations failed to establish that the bank committed direct abuse or assisted others in doing so. Id. at 744. As to direct abuse, the court found nothing in the Complaint to demonstrate that the bank obtained property "for an improper use, or acted in bad faith or with a fraudulent intent." Id. As to assisting others in abusive conduct, the court found that § 15610.30 "cannot be understood to impose strict liability for assistance in an act of financial abuse" and held that when "a bank provides ordinary services that effectuate financial abuse by a third party, the bank may be found to have 'assisted' the financial abuse only if it knew of the third party's wrongful conduct." Id. at 744-45.

These cases are instructive on the issue presented here. Plaintiff alleges that Defendant's

[2] It is undisputed that Plaintiff qualifies as an elder for the purposes of a claim under § 15610.30 since she resides in California and is over the age of 65. See Cal. Welf. & Inst. Code § 15610.27.

"failure to pay benefits due under the policy constitutes financial abuse" as defined by § 15610.30 - nothing more. See Compl., at ¶ 73. Although Plaintiff also alleges that Defendant's "appropriation and retention" of Plaintiff's premium payments and the withholding of benefits under the policy "is in bad faith and with an intent to defraud," this contention is merely an unsupported legal conclusion unentitled to an assumption of truth. See Twombly, 550 U.S. at 555. Indeed, the rather straightforward contract breach described in the Complaint is distinguishable from the class of conduct examined in Zimmer, Wood and Teselle, each of which was characterized by some indicia of fraudulent or otherwise improper activity underlying the wrongful receipt of property. No such activity is actually described here; in fact, Plaintiff alleges that Defendant denied her claim based on provisions of the policy which could allow it to do so under appropriate circumstances. See Compl., at ¶ 34 ("[Defendant] rejected the information provided by Dr. Straface and denied [Plaintiff's] claim on the basis of its own nursing assessment. . . . The denial letter stated that [Plaintiff's] condition did not qualify under the policy's definition for 'Long-Term Care.'"). In that regard, this case more closely resembles Das - there is nothing in this Complaint which supports Plaintiff's apparent theory that the denial of her claim was due to some improper or fraudulent motive on the part of Defendant.

Without the necessary facts, Plaintiff essentially seeks to look beyond Defendant's policy-driven denial of benefits and impart impropriety. There is no reason to do so based on this Complaint. Accordingly, the court concludes that Plaintiff has not stated a claim for "financial elder abuse" under § 15610.30.

Looking further, it is also apparent that the instant factual scenario cannot support elder abuse liability even with additional allegations describing the alleged contract breach. Section 15610.30 is part of the Elder Abuse Act, which was originally enacted to provide for the "private, civil enforcement of laws against elder abuse and neglect." Delaney v. Baker, 20 Cal. 4th 23, 33 (1999); see also Das, 186 Cal. App. 4th at 734-35 ("Since 1982, the Legislature has enacted numerous measures to prevent the abuse of elders."). In 2000, the California Legislature amended the Act's definition of "financial abuse" as part of a larger effort to combat "the problems of financial fraud and misrepresentation directed against seniors." See Assem. Comm. on Judiciary,

Analysis of Assem. Bill No. 2107 (1999-2000 Reg. Sess.), as amended Apr. 3, 2000, p. 2. Specifically, the Legislature recognized that "California seniors [were] losing millions of dollars by purchasing unnecessary financial products from attorneys and others who have a financial stake in the sale." Id. at p. 3. By adding language clarifying that someone can improvidently receive property by "secreting, appropriating, obtaining, or retaining" such property, the amendment to § 15610.30 expanded the class of individuals or entities that could be held responsible for misappropriation. Id. at p. 7. As the bill analysis suggests, this amendment was necessary because attorneys representing abuse victims were "having trouble" imposing liability on anyone other than the individual who actually took the property. Id. In 2008, § 15610.30 was expanded once again to include the taking of property by undue influence as another possible basis for abuse liability. Sen. Bill No. 1140 (2007-2008 Reg. Sess.) § 1.

Neither the language of § 15610.30 nor its accompanying legislative history indicate that a basic denial of insurance coverage was ever contemplated as a form of "financial elder abuse." Plaintiff's arguments to the contrary are unpersuasive.[3] Thus, this court declines to extend the statutory definition in such a manner.

The dismissal of Plaintiff's claim for "financial elder abuse" under § 15610.30 will be without leave to amend because the legislative history and interpretative case law reveal that allowing for amendment under these circumstances would be futile. See Miller v. Rykoff-Sexton, 845 F.2d 209, 214 (9th Cir. 1988).

## IV. ORDER

Based on the foregoing:

1. Plaintiff's Motion to Remand (Docket Item No. 14) is DENIED; and

2. Defendant's Motion to Dismiss (Docket Item No. 10) is GRANTED. The third claim

[3] Plaintiff misreads the legislative history when she contends that the Legislature "specifically contemplated that long-term care insurance contracts would be deemed property when it introduced an amendment to § 15610.30 in 2000." The references to long-term care insurance contracts were made in connection with proposed amendments to rectify disclosure requirements in the sale of these and related products. See Assem. Comm. on Judiciary, Analysis of Assem. Bill No. 2107 (1999-2000 Reg. Sess.), as amended Apr. 3, 2000, pp. 1, 5-6. Nothing about this history suggests that the Legislature intended to add long-term care insurance contracts to § 15610.30's definition of property.

United States District Court
For the Northern District of California

for financial elder abuse in violation of § 15610.30 is DISMISSED WITHOUT LEAVE TO AMEND.

The court will issue a separate scheduling order forthwith.

**IT IS SO ORDERED.**

Dated: August 13, 2013

EDWARD J. DAVILA
United States District Judge